UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WAYNE THOMAS COLDIRON,

      Petitioner,

v.                                      Case No.  3:14cv181/LC/CJK

JULIE L. JONES,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

      Before the court is an amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 17).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 34; *see also* Doc. 53 (additional transcript)).  Petitioner replied.  (Doc. 58).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and

attachments before the court show that petitioner is not entitled to habeas relief, and that the amended petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

On January 14, 2011, petitioner was convicted by jury verdict of the first degree murder of Byrd Billings (Count 1), the first degree murder of Melanie Billings (Count 2) and home invasion robbery with a firearm (Count 3), in Escambia County Circuit Court Case No. 09-CF-3249. (Doc. 34, Ex. F).[1] That same date, petitioner was adjudicated guilty and sentenced to two consecutive life terms for the murders and a concurrent 15-year term for the robbery. (Ex. G). The Florida First District Court of Appeal ("First DCA") affirmed the judgment on November 9, 2011, per curiam and without a written opinion. *Coldiron v. State*, 75 So. 3d 271 (Fla. 1st DCA 2011) (Table) (copy at Ex. K).

On October 24, 2012, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 (Ex. M). The state circuit court struck the motion as facially insufficient with leave to amend. (Ex. N). Petitioner filed an amended motion on February 26, 2013. (Ex. O). The state court denied relief, without an evidentiary hearing. (Ex. P). The First DCA affirmed, per curiam

---

[1] All references to exhibits are to those provided at Doc. 34, unless otherwise noted.

and without a written opinion.  *Coldiron v. State*, 146 So. 3d 27 (Fla. 1st DCA 2014) (Table) (copy at Ex. S).  The mandate issued April 14, 2014.  (Ex. V).

While his postconviction appeal was pending, petitioner filed another motion for postconviction relief under Fla. R. Crim. P. 3.850 on March 5, 2014, based on newly discovered evidence.  (Ex. X).  The state circuit court denied the motion as untimely and successive.  (Ex. Z).  The First DCA affirmed, per curiam and without a written opinion.  *Coldiron v. State*, 150 So. 3d 1136 (Fla. 1st DCA 2014) (Table) (copy at Ex. GG).  The mandate issued November 4, 2014.  (Ex. HH).

Petitioner filed his original federal habeas petition on April 11, 2014 (doc. 1), which he later amended (doc. 17).  The amended petition presents twelve claims. (Doc. 17).  Respondent asserts that each of petitioner's claims fail for one or more of the following reasons:  (1) the claim is not cognizable on federal habeas review because it presents a purely state law issue; (2) the claim is procedurally defaulted; (3) the state courts' rejection of the claim was consistent with clearly established federal law, and was based on a reasonable determination of the facts.  (Doc. 34, pp. 6-33).

## RELEVANT LEGAL STANDARDS

Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test was described by Justice O'Connor as follows:

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part

>    Under the "contrary to" clause, a federal habeas court may grant
> the writ if the state court arrives at a conclusion opposite to that reached
> by this court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable
> facts.  Under the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but unreasonably
> applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas

petition upon which there has been an adjudication on the merits in a state court

proceeding, the federal court must first ascertain the "clearly established Federal

law," namely, "the governing legal principle or principles set forth by the Supreme

Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538

U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly

established" only when a Supreme Court holding at the time of the state court

decision embodies the legal principle at issue.  *Thaler v. Haynes*, 559 U.S. 43, 47,

130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Woods v. Donald*, — U.S. —, 135 S.

Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly

established Federal law for purposes of § 2254(d)(1) includes only the holdings, as

---

II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter,
Ginsburg, and Breyer.

opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's

claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam).  In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding."   28 U.S.C. § 2254(d)(2).   The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable application" clause, the federal court applies an objective test.  *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").   Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1).  The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the

Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

<u>Clearly Established Federal Law Governing Claims of Ineffective Assistance of Counsel</u>

Ten of petitioner's twelve claims involve instances where petitioner asserts trial counsel was ineffective. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct.

2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance of counsel claims. The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. 466 U.S. at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness. Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (*quoting Strickland*, 466 U.S. at 694).

Trial "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." *Cullen v. Pinholster*, 563 U.S. 170, 189, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) (quotation marks and alterations omitted). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "[T]he absence of evidence cannot overcome the strong

presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Burt v. Titlow*, 571 U.S. —, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013) (quotation marks and alterations omitted).

With regard to prejudice, the *Strickland* court emphasized that a defendant must show a "reasonable probability" of a different result. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. As the Court in *Richter* explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must

guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id*. (citations omitted).

## DISCUSSION

<u>Ground One</u>    "<u>Whether the trial court committed fundamental error in instructing the jury on the law of principals?</u>"  (Doc. 17, pp. 3-4).

Petitioner claims the trial court violated his rights under the Sixth and Fourteenth Amendments when it instructed the jury on principal liability, because neither the original information nor the superseding indictment put him on notice that the prosecution intended to proceed on a theory of principal liability, depriving him of the ability to prepare a defense.  (Doc. 17, pp. 3-4).   Petitioner argues that the "unnecessary" instruction deprived him of a fair trial because "there was a reasonable possibility that Petitioner was convicted of crimes not charged in the state's charging document or Grand Jury indictment."  (*Id*., p. 4).  Petitioner asserts he exhausted this claim by raising it as fundamental error in his direct appeal.  (*Id*.).

Respondent asserts that petitioner's claim raises a purely state law issue and is not cognizable on federal habeas review.  (Doc. 34, pp. 6-8).  Respondent argues

in the alternative that to the extent the Sixth or Fourteenth Amendment could be implicated, the claim fails on the merits. (*Id.*, pp. 8-9).

A.     Clearly Established Federal Law

An alleged error in instructing the jury cannot constitute a basis for federal habeas relief unless the petitioner shows both that the instruction was given in error and that the error "so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S. Ct. 1730, 52 L. Ed. 2d 203 (1977); *see also Estelle v. McGuire*, 502 U.S. 62, 72, 112 S. Ct. 475, 482, 116 L. Ed. 2d 385 (1991) (a defendant's right to due process is not violated unless an allegedly erroneous instruction, when viewed in light of the entire trial, was so misleading as to make the trial unfair).

B.     Federal Review of State Court Decision

Petitioner raised this claim as his sole claim on direct appeal. (Ex. I). The First DCA summarily affirmed the judgment. (Ex. K). The First DCA's decision qualifies as an adjudication on the merits under § 2254 so as to warrant deference. *Richter*, 562 U.S. at 99 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

The indictment charged petitioner as follows:

COUNT 1:  THE GRAND JURORS OF THE STATE OF FLORIDA, LAWFULLY SELECTED, IMPANELED AND SWORN, INQUIRING IN AND FOR THE BODY OF THE COUNTY OF ESCAMBIA UPON THEIR OATHS AS GRAND JURORS, DO PRESENT THAT **WAYNE THOMAS COLDIRON**, **on or about July 9, 2009**, at and in **Escambia** County, Florida, did unlawfully from a premeditated design to effect the death of a human being, to-wit: **BYRD BILLINGS**, or while engaged in the perpetration of or in an attempt to perpetrate a felony, to-wit:  **Home Invasion Robbery**, did kill and murder said **BYRD BILLINGS** by **shooting him with a firearm**, and in the process thereof did use, carry or possess a weapon, to-wit: **a firearm**, in violation of Sections 782.04 and 775.087, Florida Statutes.  **(CF)**

COUNT 2:  THE GRAND JURORS OF THE STATE OF FLORIDA, LAWFULLY SELECTED, IMPANELED AND SWORN, INQUIRING IN AND FOR THE BODY OF THE COUNTY OF ESCAMBIA UPON THEIR OATHS AS GRAND JURORS, DO PRESENT THAT **WAYNE THOMAS COLDIRON**, **on or about July 9, 2009**, at and in **Escambia** County, Florida, did unlawfully from a premeditated design to effect the death of a human being, to-wit: **MELANIE BILLINGS**, or while engaged in the perpetration of or in an attempt to perpetrate a felony, to-wit:  **Home Invasion Robbery**, did kill and murder said **MELANIE BILLINGS** by **shooting her with a firearm**, and in the process thereof did use, carry or possess a weapon, to-wit: **a firearm**, in violation of Sections 782.04 and 775.087, Florida Statutes.  **(CF)**

COUNT 3:  THE GRAND JURORS OF THE STATE OF FLORIDA, LAWFULLY SELECTED, IMPANELED AND SWORN, INQUIRING IN AND FOR THE BODY OF THE COUNTY OF ESCAMBIA UPON THEIR OATHS AS GRAND JURORS, DO PRESENT THAT **WAYNE THOMAS COLDIRON**, **on or about July 9, 2009**, at and in Escambia County, Florida, did unlawfully enter a dwelling located at **9717 Mobile Highway** with the intent to commit a robbery, and did commit a robbery of **BYRD BILLINGS**, an

occupant therein, and in the course of committing the offense, the said **WAYNE THOMAS COLDIRON** did carry and actually possess a firearm, to-wit: **a firearm**, in violation of Sections 812.135(1) and (2)(a) and 775.087, Florida Statutes.  **(F1PBL-L10)**

(Ex. B).

Petitioner does not allege that the indictment failed to sufficiently charge him with the substantive crimes of first degree murder or home invasion robbery with a firearm; rather, he contends the indictment failed to sufficiently charge him as a principal in the crimes.  Under Florida law, charging an individual with a substantive crime incorporates the commission of the crime as a principal.  *See State v. Roby*, 246 So.2d 566 (Fla. 1971) ("Under our statute [Florida Statutes § 777.011], therefore, a person is a principal in the first degree whether he actually commits the crime or merely aids, abets, or procures its commission, and it is immaterial whether the indictment or information alleges that the defendant committed the crime or was merely aiding or abetting in its commission, so long as the proof establishes that he was guilty of one of the acts denounced by the statute.").  Because *Roby* was the law in Florida when petitioner was tried, the trial court did not err in instructing the jury on the principal theory.  Additionally, petitioner does not allege that the jury instruction on principals was a misstatement of Florida law.

Petitioner has not demonstrated that the First DCA's denial of his due process claim was contrary to, or an unreasonable application of, clearly established federal

law.  *See Mitchell v. Esparza*, 540 U.S. 12, 14, 124 S. Ct. 7, 157 L. Ed. 2d 263 (2003)

(holding that Ohio court's ruling that a defendant need not be identified in an

indictment as a "principal offender" unless more than one defendant is named in the

indictment, was not contrary to clearly established federal law); *see also, e.g.,*

*Thomas v. McDonough*, No 4:07-cv-00473-MP-EMT (N.D. Fla. Sept. 2, 2010)

(rejecting identical habeas claim).  Petitioner is not entitled to federal habeas relief

on Ground One.

Ground Two          "Whether defendant was deprived of the effective assistance of
                    counsel, when counsel failed to pursue a motion for suppression
                    of recorded statements made to police by defendant's [sic] during
                    post arrest interrogation, when counsel advised defendant that he
                    had reached an agreement with the State, where it was stipulated
                    that if the defendant did not testify the recorded statements would
                    not be entered into trial?"  (Doc. 17, pp. 4-5).

        Petitioner alleges that prior to trial, defense counsel filed a motion to suppress

petitioner's statements to Escambia County Sheriff's deputies during his post-arrest

interrogation; that on the date of the suppression hearing counsel and the prosecutor

announced to the court that they had reached an agreement which obviated the need

for a ruling on the defense motion; and that defense counsel made an agreement with

the prosecutor that petitioner would relinquish his right to testify at trial in exchange

for the State agreeing not to enter petitioner's recorded statements into evidence.

(Doc. 17, p. 4).  Petitioner alleges that, contrary to the agreement, the State called as

its last witness Leonard Tyree, one of the interrogating officers, who testified that petitioner gave a statement after being advised of his *Miranda* rights, and the State then played petitioner's statement for the jury in its entirety with no objection from defense counsel.  (*Id.*, p. 5).  Petitioner claims counsel performed deficiently by "misinform[ing] defendant as to the reasons for not proceeding with the motion to suppress" and for failing to preserve the issue for appellate review.  (*Id.*).  Petitioner claims he was prejudiced by admission of his statements, because they "were inculpatory in nature".  (*Id.*).  Respondent asserts that petitioner's claim is based on facts which are not true, and that petitioner is not entitled to federal habeas relief because the state court's rejection of the claim is not contrary to and did not involve an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts.  (Doc. 34, pp. 9, 13-14).

A.    Clearly Established Federal Law

The clearly established law governing claims of ineffective assistance of counsel is the *Strickland* standard, described above.  In addition, "[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to

demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.
Ct. 2574, 91 L. Ed. 2d 305 (1986).

B.    Federal Review of State Court Decision

Petitioner raised this claim in his first Rule 3.850 proceeding as Ground One.
(Ex. O).  The state court denied the claim on the merits.  The state circuit court's
written order, which is the last reasoned decision rejecting petitioner's claim, began
by correctly identifying and explaining the *Strickland* standard as the relevant legal
standard.  (Ex. P, pp. 121-122).[3]  The state circuit court denied relief as follows:

> In Defendant's first claim, Defendant alleges that his counsel was
> ineffective for failing to move to suppress his recorded statements made
> to police.  Defendant asserts that counsel initially filed a motion to
> suppress his recorded statement; however, on the day of the motion
> hearing, defense counsel and the State announced that an "agreement
> had been reached . . . that would cease the need for presentation of
> argument toward suppression."  In essence according to Defendant, the
> agreement announced was that "if the defendant would relinquish his
> right to testify in his own behalf, the State would not enter the recorded
> statement into evidence."  However, according to Defendant, the State
> offered Defendant's statement into evidence at trial in contravention of
> the agreement without objection by defense counsel.
>
> The record confirms that counsel filed a motion to suppress
> certain statements made by Defendant.FN5  However, the record does
> not support defendant's assertion that counsel agreed not to pursue the
> motion on the basis that Defendant's statement to law enforcement
> would be excluded from evidence if Defendant did not testify.  Rather,
> the prosecutor stated (and defense counsel concurred), "[The] State is

---

[3] Where a particular page has more than one page number, the court references the number
appearing on the far bottom center of the page.

in a position to concede that after Mr. Coldiron utters the words, 'I would, I would love to talk to you, but I want to do it in front of a lawyer,' the State at this point in time without concession will agree not to play anything of his statement after that period of time."FN6   It appears that the State honored this agreement during the course of the trial, concluding the playing of Defendant's statement for the jury prior to defendants' request for an attorney.FN7

> FN5 <u>See</u> Defendant's Exhibit A.
> FN6 <u>See</u> Attachment 4, December 20, 2010, hearing excerpt, pages 2-3.
> FN7 <u>See</u> Attachment 5, trial transcript excerpts, pages 690-693, 760-851.  The Court does not include the entirety of Defendant's statement as offered at trial due to its length.

Defendant has further failed to demonstrate that he was prejudiced by the alleged deficiency of counsel.  It is true that the recorded statement was somewhat inculpatory.  However, Defendant has failed to demonstrate that the motion to suppress would have been properly granted.  Secondly, Defendant has failed to show that the outcome of his trial would have been different had the statement been suppressed.  Two co-defendants testified in detail regarding Defendant's role in the home invasion at the Billings' residence, and the crime was captured on video surveillance cameras.FN8 Furthermore, it is clear that counsel used the recorded statement to Defendant's benefit in his closing argument in an attempt to support his duress defense.FN9  Defendant is not entitled to relief on this basis.

> FN8 <u>See</u> Attachment 5, trial transcript excerpts, pages 266-370; 379-429; 434-553.
> FN9 <u>See</u> Attachment 5, trial transcript excerpts, pages 898-924.

(Ex. P, pp. 122-124).  The First DCA summarily affirmed.  (Ex. S).

The state court's decision was not "contrary to" clearly established federal law, because the state court applied the standard as identified by the Supreme Court in *Strickland*, and there is no Supreme Court case with materially indistinguishable facts dictating a different outcome than that reached by the state court.  The state court's ruling also did not involve an "unreasonable application" of clearly established federal law, or an unreasonable determination of the facts.

Respondent has provided a copy of the motion to suppress (doc. 34, Ex. C), the transcript of the December 20, 2010 pretrial hearing memorializing the parties' agreement (doc. 53), and the trial transcript (doc. 34, Ex. E).  The record confirms that the state court's findings of fact are correct, and, moreover, that petitioner's sworn allegations misrepresent the agreement defense counsel made with the State. The parties resolved the motion to suppress by (1) the State agreeing not to introduce any statements made by petitioner <u>after he invoked his right to counsel</u>, and (2) the State agreeing to redact those portions of petitioner's statements made prior to invocation of his right to counsel which referenced petitioner's prior convictions. (Doc. 53).  The prosecutor stated, in relevant part:

> [PROSECUTOR]: . . . I've been talking with Mr. Lerman and Ms. Wilson [defense counsel].  In essence we are, State is in a position to concede that after Mr. Coldiron utters the words, I would, I would love to talk to you, but I want to do it in front of a lawyer, the State at this point in time without concession will agree not to play anything of his statement after that period of time.

So, in essence – and we also have talked to M[r]. Lerman and Ms. Wilson that there are certain things in that prior to that that needs to be excised regarding Mr. Coldiron talking about a Tennessee crime and some other things that need to be excised from that.

But, we are in agreement that after page 64 and I think it's line 14 or fifteen, after he utters those words that we will not attempt or try to bring in to play those in our case in chief [the] remaining aspect of his statement to law enforcement.

There's also a statement to Mr. Baggett.  That's on the second day and Mr. Hardy, Deputy Hardy.  So those we agreed not to bring in.

MR. LERMAN [Defense counsel]:  That's our understanding, Judge.  Based on the state's representation, we have spoken with Mr. Coldiron, explained to him that basically we're stipulating to that portion of the motion to suppress that deals with Mr. Coldiron's request for an attorney and any statements made thereafter.  And that the statements that were made prior to his request for counsel be admitted with some editing regarding prior convictions of Mr. Coldiron that he admitted to and that Mr. Molchan [prosecutor] was working on that editing part for us.

THE COURT:  All right.  So that will take care of the motion – the issues raised in the motion to suppress.

MR. MOLCHAN:  I mean, the only caveat, Judge, would be if Mr. Coldiron testified to those circumstances.  We would have to look at that particular portion.  But again, that's as far as in our case in chief, that's our – that motion is basically taken care of.

MR. LERMAN:  And that's our understanding.

(Doc. 53, pp. Tr. at pp. 2-4).

The foregoing demonstrates that the parties' agreement did not involve relinquishment of petitioner's right to testify, nor did it involve a blanket prohibition on the introduction of petitioner's statements.  The record further demonstrates that the prosecutor did not violate the parties' agreement – he introduced only those portions of Officer Tyree's interview that preceded petitioner's invocation of his right to counsel, and did not introduce petitioner's statements to Officer Baggett that occurred after petitioner invoked his right to counsel.  (Doc. 34, Ex. E).

Given the state court's factual determinations and the evidence in the record, it was not unreasonable for the state court to conclude that petitioner failed to establish that trial counsel's handling of the motion to suppress fell below an objective standard of reasonableness; that there is a reasonable probability the outcome of the motion to suppress would have been more favorable to the defense had counsel pursued a judicial ruling in lieu of the stipulation; that there is a reasonable probability the verdict would have been different absent counsel's stipulation; or that there was a meritorious basis for counsel to object to those portions of petitioner's statements the State introduced.

The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard.  Nor was the

decision based on an unreasonable determination of the facts.  Petitioner is not

entitled to federal habeas relief on Ground Two.

Ground Three          "<u>Whether defendant was deprived of the effective assistance of
                      counsel, when counsel failed to move for a change of venue,
                      preserving the issue for appellate review, where due to national
                      publicity surrounding defendant's case he was prevented from
                      selecting jurors who could put these matters out of their minds
                      and try the case based solely upon the evidence presented in the
                      courtroom?</u>"  (Doc. 17, p. 5).

Petitioner faults trial counsel for failing to move for a change of venue.  In

support of this claim, petitioner alleges that prior to the murders, the Billings had

appeared on the Oprah Winfrey show where they were celebrated for their generosity

in adopting several handicapped children, and that following the murders, the case

received daily coverage on local and national news. (Doc. 17, p. 5).  Petitioner claims

it was incumbent upon trial counsel to move for a change of venue, regardless of

whether counsel felt the motion would be successful, to at least preserve the issue

for appellate review.  (*Id*., p. 6).

Respondent asserts that the state court ruled as a matter of state law that

counsel did not have a basis to request a change of venue and, consequently,

petitioner's proposed motion would not have succeeded; that the state court's

binding determination of state law means there could not be attorney error or

prejudice for failing to move for a change of venue; and that petitioner has therefore

failed to establish that the state court's rejection of his ineffective assistance claim is contrary to or an unreasonable application of *Strickland*.  (Doc. 34, pp. 15-16).

A.    Clearly Established Federal Law

The clearly established law governing claims of ineffective assistance of counsel is the *Strickland* standard, described above.

B.    Federal Review of State Court Decision

Petitioner raised this claim in his first Rule 3.850 proceeding as Ground Two. (Ex. O).  The state court identified and articulated the *Strickland* standard (Ex. P, pp. 121-122), and denied relief on the merits as follows:

> In his second ground, Defendant asserts that his counsel was ineffective for failing to move for a change of venue.  Defendant claims that counsel "should have moved the court for a change of venue because the general state of mind of the inhabitants of the community was so infected by knowledge of the incident and accompanying prejudice, bias and preconceived opinions that jurors in this community could not possibly put these matters out of their minds and try the case based solely upon the evidence presented in the courtroom."

> Defendant has failed to show that his counsel was ineffective or that he was prejudiced by counsel's failure to move for a change of venue.  "When applying the prejudice prong to a claim that defense counsel was ineffective for failing to move for a change of venue, the defendant must, at a minimum, bring forth evidence demonstrating that the trial court would have, or at least should have, granted a motion for a change of venue if [defense] counsel had presented such a motion to the court."  Dillbeck v. State, 964 So. 2d 95, 104 (Fla. 2007) (citations omitted).  Defendant has presented no viable legal grounds which would have or should have resulted in the Court's granting a change of venue, had counsel so moved.  The record demonstrates that the jury

was questioned regarding their awareness of the case and whether they could be fair and impartial jurors.FN10  Defendant points to no record evidence regarding the level of publicity surrounding his trial, or to any record evidence that the jury was "so infected by knowledge of the incident and accompanying prejudice . . . that jurors could not possibly put these matters out of their minds and try the case solely upon the evidence presented in the courtroom." <u>McCaskill v. State</u>, 344 So. 2d 1276, 1278 (Fla. 1977) (citations omitted).  Defendant is not entitled to relief on this basis.

> FN10 <u>See</u> Attachment 5, trial transcript excerpts, pages 7-115.

(Ex. P, pp. 124-125).  The First DCA summarily affirmed.  (Ex. S).

The court cannot agree with respondent's contention that the state court's resolution of the merit of the underlying change of venue issue rested purely on state law grounds.  The Florida Supreme Court's *McCaskill* test for determining whether a change of venue is required springs not only from state law, but also from federal constitutional principles:

> We adopt the test stated in *Kelley v. State*, 212 So.2d 27, 28 (Fla. 2d DCA 1968):
>
>> 'Knowledge of the incident because of its notoriety is not, in and of itself, grounds for a change of venue.  The test for determining a change of venue is whether the general state of mind of the inhabitants of a community is so infected by knowledge of the incident and accompanying prejudice, bias, and preconceived opinions that jurors could not possibly put these matters out of their minds and try the case solely upon the evidence presented in the courtroom.  *Singer v. State*, (Fla. 1959) 109 So.2d 7;

> *Collins v. State*, (Fla. App. 1967) 197 So. 2d 574 and cases cited therein.'
>
> The United States Supreme Court affirmed this principle in *Murphy v. State of Florida*, 421 U.S. 794, 95 S. Ct. 2031, 44 L. Ed. 2d 589 (1975), holding that jury exposure to news accounts of the crime with which a defendant is charged does not presumptively deprive the defendant of due process.  Further, it held the defendant must show inherent prejudice in the trial setting or facts which permit an inference of actual prejudice from the jury selection process in order to merit a change of venue.

*McCaskill* at 1278.   The undersigned nonetheless agrees with respondent that petitioner fails to satisfy § 2254(d)'s deferential standard.

Section 2254(d)(2) provides no basis for relief, because the state court's factual determinations are amply supported by the state court record.  *See Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) ("A state court's . . . determination of facts is unreasonable only if 'no fairminded jurist' could agree with the state court's determination. . . ."); *Landers v. Warden, Attorney Gen. of Ala.*, 776 F.3d 1288, 1294 (11th Cir. 2015) (reiterating that standard as the test for evaluating the reasonableness of a state court's decision under § 2254(d)(2)).  Further, petitioner has not shown, by clear and convincing evidence, that any factual finding is incorrect.  *See* 28 U.S.C. § 2254(e) ("[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the

burden of rebutting the presumption of correctness by clear and convincing evidence.").

Section 2254(d)(1) provides no basis for relief, because the state court applied the *Strickland* test.  The remaining question is whether the state court's rejection of petitioner's claim involved an unreasonable application of the *Strickland* standard.

The state court determined, reasonably, that petitioner failed to bring forth evidence of actual or presumed prejudice, and that without such evidence his *Strickland* claim failed.  To satisfy the prejudice prong of *Strickland*'s analysis, petitioner must establish "that there is a reasonable probability that, but for his counsel's failure to move the court for a change of venue, the result of the proceeding would have been different.  This requires, at a minimum, that [petitioner] bring forth evidence demonstrating that there is a reasonable probability that the trial court would have, or at least should have, granted a motion for change of venue if [petitioner's] counsel had presented such a motion to the court."  *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000).  "A defendant is entitled to a change of venue if he can demonstrate either 'actual prejudice' or 'presumed prejudice.'"  *Id*.

> "To find the existence of actual prejudice, two basic prerequisites must be satisfied.  First, it must be shown that one or more jurors who decided the case entertained an opinion, before hearing the evidence adduced at trial, that the defendant was guilty.  Second, these jurors, it must be determined, could not have laid aside these preformed opinions and rendered a verdict based on the evidence presented in court."

*Id*. (*quoting Coleman v. Zant*, 708 F.2d 541, 544 (11th Cir. 1983) (internal citations and quotation marks omitted)).  "If a defendant cannot show actual prejudice, then he must meet the demanding presumed prejudice standard." *Meeks*, 216 F.3d at 961.

> "Prejudice is presumed from pretrial publicity when pretrial publicity is sufficiently prejudicial and inflammatory and the prejudicial pretrial publicity saturated the community where the trials were held.  The presumed prejudice principle is rarely applicable, and is reserved for an extreme situation. . . . [W]here a petitioner adduces evidence of inflammatory, prejudicial pretrial publicity that so pervades or saturates the community as to render virtually impossible a fair trial by an impartial jury drawn from the community, jury prejudice is presumed and there is no further duty to establish bias."

*Meeks* at 961 (*quoting Coleman v. Kemp*, 778 F.2d 1487, 1490 (11th Cir. 1985) (internal citations and quotation marks omitted)); *see also Manning v. State*, 378 So.2d 274, 276 (Fla. 1979) ("[A] determination must be made as to whether the general state of mind of the inhabitants of a community is so infected by knowledge of the incident and accompanying prejudice, bias, and preconceived opinions that jurors could not possibly put these matters out of their minds and try the case solely on the evidence presented in the courtroom.").

The state court determined, reasonably, that petitioner failed to demonstrate actual prejudice on the part of any juror.  Petitioner's allegation that "the crime created a media circus that provided for daily coverage on local and national news shows condemning the acts of the perpetrator's [sic] as senseless killings of these

innocent victims" (doc. 1, p. 5) does not show, or raise a presumption, that any venireperson exposed to publicity was rendered incapable of giving petitioner a fair trial.  To the contrary, the transcript of jury selection reveals that although several prospective jurors recalled hearing or seeing media reports about the case, all of the jurors who sat on petitioner's case affirmed that they had not heard any pretrial publicity <u>specific to petitioner</u>, that they had not formed any fixed opinions about the case, that they could put the information they heard from media reports aside and not allow it to influence them, and that the media reports they heard would not in any way affect their ability to be fair and impartial jurors in the case.  (Ex. E, pp. 16-114).  Petitioner has not shown, nor does anything in the state court record suggest, that even one juror, prior to hearing the evidence, formed an opinion that petitioner was guilty and could not have rendered a verdict based on the evidence presented at trial.  Petitioner has not shown defense counsel had any basis to argue for a change of venue on grounds of actual prejudice.  *See Meeks* at 961-962 (finding no actual prejudice where petitioner did not show that even one juror, prior to hearing the evidence, formed an opinion that he was guilty, and if the petitioner had presented evidence indicating that a juror had formed such an opinion, he still failed to show that the juror could not have rendered a verdict based on the evidence presented at trial; the fact that all except one of the jurors had been exposed to some pretrial

publicity did not raise a presumption of prejudice, because the evidence of the pretrial publicity showed that it was essentially factual and not so pervasive or insidious as to raise the presumption that any venireperson exposed to it was rendered incapable of giving the petitioner a fair trial); *see also Cummings v. Dugger*, 862 F.2d 1504, 1510-11 (11th Cir. 1989) (finding no actual prejudice even though eleven of twelve jurors had been exposed to some degree of pretrial publicity).

Petitioner likewise fails to meet the extremely exacting presumed prejudice standard.  Petitioner's vague allegation of a "media circus . . . condemning the acts of the perpetrator's [sic] as senseless killings" does not support a finding of pretrial publicity so inflammatory, prejudicial and pervasive "as to render virtually impossible a fair trial by an impartial jury drawn from the community." *Coleman*, 778 F.2d at 1490.  As petitioner failed to "bring forth evidence demonstrating that there is a reasonable probability that the trial court would have, or at least should have, granted a motion for change of venue if [petitioner's] counsel had presented such a motion to the court", *Meeks*, 216 F.3d at 961, the state court was not unreasonable in concluding that petitioner failed to carry his burden under the *Strickland* standard.

The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground Three. *See, e.g. Meeks*, 216 F.3d at 960-968 (reviewing, apparently *de novo*, a Florida prisoner's ineffective assistance claim based on counsel's failure to move for a change of venue and concluding that petitioner failed to satisfy *Strickland*'s prejudice prong: "Because we find that Meeks has failed to bring forth evidence of pretrial publicity and racial bias sufficient to establish either actual or presumed prejudice, we hold that there is no reasonable probability that the trial court would have granted a motion for change of venue, even if Meeks' counsel had presented such a motion to the court.").

Ground Four          "Whether defendant was deprived of the effective assistance of counsel, when counsel failed to develop a defense based on exculpatory evidence revealed in a letter written to counsel by co-defendant Leonard 'Frank' Gonzalez, Sr., where information would have tended to exculpate defendant's involvement in the planning and execution of the crimes being prosecuted in this case?" (Doc. 17, p. 6).

Petitioner faults trial counsel for failing to develop a defense based on a letter dated April 4, 2010, which co-defendant Leonard Gonzalez, Sr. wrote to his (Gonzalez's) defense attorney Meredith Ibanez. Petitioner attached a copy of the letter to his Rule 3.850 motion. (Ex. O, pp. 111-114). The only portion of the letter

that mentions petitioner states:  "Wayne Coldiron informed me that, on more than one occasion, Gonzalez Jr. told him that:  'You know to [sic] much & you're in to [sic] deep to back out.'"  (Ex. O, p. 112 ¶ 3).  Petitioner alleges that "had this communication been revealed and developed further, it would have provided evidence that defendant (Coldiron) was not a willing participant in the robbery and confirmed the fact that once the shooting began, (Coldiron) attempted to drive-off in the red van (pushing Gonzalez, Sr. from behind the wheel) leaving the other participants to fend for themselves, without an escape vehicle."  (Doc. 17, p. 6).

Respondent asserts that the state court ruled as a matter of state law that the letter was inadmissible; that the state court's binding determination of state law means there could not be attorney error or prejudice for failing to attempt to introduce the letter into evidence; and that, consequently, petitioner cannot establish that the state court's rejection of his ineffective assistance claim is contrary to or an unreasonable application of *Strickland*.  (Doc. 34, pp. 16-17).

A.    Clearly Established Federal Law

The clearly established law governing claims of ineffective assistance of counsel is the *Strickland* standard, described above.

B.    Federal Review of State Court Decision

Petitioner raised this claim in his first Rule 3.850 proceeding as Ground Three.

(Ex. O).  The state court identified and articulated the *Strickland* standard (Ex. P, pp.

121-122), and denied relief on the merits as follows:

> In his third ground, Defendant claims that his counsel was ineffective for failing to develop a defense based on "exculpatory evidence" contained in a letter written by one of his co-defendants, Leonard Gonzalez, Sr., to Gonzalez Sr.'s counsel.  In the letter, Gonzalez informed his attorney that Defendant was not involved in the planning or gathering of the firearms or paraphernalia used during the crime, and that Defendant was reluctant to participate.  The letter also told counsel that Leonard Gonzalez, Jr. threatened Defendant because he "knew too much" and indicated if he withdrew from the crime, Gonzalez Jr. would kill Defendant, Defendant's girlfriend, and his girlfriend's child.  Defendant alleges that if this letter had been introduced to the jury, it would have provided evidence that Defendant was not a willing participant and that "once the shooting began, [Defendant] attempted to drive off in the red van . . . leaving the other participants to fend for themselves, without an escape vehicle."

> First, Defendant has failed to demonstrate that the letter in question would have been admissible at trial, as it is clearly hearsay. Therefore, it does not appear that counsel was deficient for failing to attempt to introduce such a letter.  Secondly, it appears that the information contained in the letter would have been largely cumulative of evidence which was offered at trial.  It was uncontested at trial that Defendant was not involved in the planning of the crime until shortly before the crime occurred.FN11  Furthermore, Carol Brant testified that she overheard defendant say that he "did not want to go," presumably in reference to the crime.FN12   Additionally, Defendant, in his recorded statement, indicated that he was in fear of Leonard Gonzalez, Jr.FN13  Defendant has failed to demonstrate either that his counsel was deficient, or that he was prejudiced.  It has not been shown that the letter was admissible, or that, if it were properly admitted, that it would

have likely rendered a different result at his trial.  He is not entitled to relief on this basis.

> FN11 <u>See</u> Attachment 5, trial transcript excerpts, pages 266-370; 379-429; 434-533.
> FN12 <u>See</u> Attachment 5, trial transcript excerpts, pages 185-197.
> FN13 <u>See</u> Attachment 5, trial transcript excerpts, pages 690-693, 760-851.

(Ex. P, pp. 125-126).

The state circuit court concluded, as a matter of state law, that the letter was not admissible into evidence because it was hearsay.  The First DCA affirmed that decision.  (Ex. S).  When the state courts have already answered the question of how an issue would have been resolved under that state's law had defense counsel done what the petitioner argues he should have done, "federal habeas courts should not second-guess them on such matters" because "it is a fundamental principle that state courts are the final arbiters of state law." *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (quotation marks omitted).  This court will not second-guess the Florida state courts' conclusion that the letter was inadmissible under state evidentiary law.  *See id*.

Further, as the state court determined and as the trial transcript confirms, the single sentence in Gonzalez Sr.'s letter was the same in substance as other evidence (other witnesses' testimony and petitioner's statements to law enforcement) that was

entered into evidence.  Thus, even assuming to petitioner's benefit that his defense attorney was aware of the letter written by co-defendant Gonzalez Sr. to Attorney Meredith Ibanez, petitioner has not shown that counsel's decision not to introduce the letter was unreasonable or that there is a reasonable probability the result of his trial would have been different had counsel attempted to admit the letter into evidence.  *See, e.g., Tompkins v. Moore*, 193 F.3d 1327, 1334 and n.3 (11th Cir. 1999) (petitioner failed to show counsel was ineffective for failing to offer petitioner's proposed evidence, where evidence was either not admissible under state law, or there was no reasonable probability of a different result had it been admitted, or both); *see also, e.g., Walker v. Sec'y, Fla. Dep't of Corr.*, 495 F. App'x 13, 17 (11th Cir. 2012) (holding that state court's rejection of habeas petitioner's claim that counsel was ineffective for failing to call the petitioner's brother as an alibi witness was consistent with *Strickland*, because the testimony was cumulative).

The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Four.

Ground Five                "<u>Whether defendant was denied the effective assistance of counsel, when counsel failed to solicit testimony from witnesses who's [sic] names, addresses and phone numbers were provided to counsel, witnesses who would have provided information that would tend to disprove the State's position that defendant was so destitute that he was driven to commit the offenses for which he was being tried?</u>"  (Doc. 17, p. 10).

Petitioner faults trial counsel for failing to interview and evaluate as potential witnesses Jerry King and William Taylor, who, according to petitioner, would have testified "that defendant was not so desperate for money that he would intentionally participate in a crime of this magnitude without being coerced to do so by some outside influence."  (Doc. 17, p. 10).  Petitioner asserts he provided defense counsel with the contact information for these proposed witnesses, but counsel did not contact them.  (*Id*.).

Respondent asserts that the state court ruled as a matter of state law that the testimony of petitioner's proposed witnesses would not have been admissible; that the state court's binding determination of state law means there could not be attorney error or prejudice for failing to make a meritless attempt to introduce the testimony; and that petitioner has therefore failed to establish that the state court's rejection of his ineffective assistance claim is contrary to or an unreasonable application of *Strickland*.  (Doc. 34, pp. 17-19).

A.     Clearly Established Federal Law

The clearly established law governing claims of ineffective assistance of counsel is the *Strickland* standard, described above.

B.     Federal Review of State Court Decision

Petitioner raised this claim in his first Rule 3.850 proceeding as Ground Four. (Ex. O).  The state court identified and articulated the *Strickland* standard (Ex. P, pp. 121-122), and denied relief on the merits as follows:

> In his fourth ground, Defendant alleges that his counsel was ineffective for failing to solicit testimony from witnesses who would have shown that Defendant was not "so destitute that he was driven to commit the offenses for which he was being tried."  Defendant asserts that counsel should have called witnesses Jerry King and William Taylor to testify that "defendant was not so desperate for money that he would intentionally participate in a crime of this magnitude without being coerced to do so by some outside influence."  Defendant also makes a non-specific claim that his counsel was ineffective for failing to call witnesses who would have testified to his "inherent ability to earn a living, regardless of the hardships he was enduring at the time."
>
> Defendant has failed to show either deficient performance or prejudice.  First, although the State did offer Defendant's financial situation as a possible motive, Defendant's economic circumstances were a minimal point of interest at trial.  Furthermore, Defendant's girlfriend testified that Defendant was able to work, and testified the he did work doing certain things to bring in money.FN14  In addition, it is unlikely that the Court would have permitted the named witnesses to testify to their unsupported opinions that "defendant was not so desperate for money that he would intentionally participate in a crime of this magnitude without being coerced to do so by some outside influence."  Defendant has failed to specify any <u>facts</u> to which these

witnesses might have testified which would have likely rendered a different result at his trial. He is not entitled to relief on this basis.

> FN14 See Attachment 5, trial transcript excerpts, pages 177-184.

(Ex. P, pp. 126-127). The First DCA summarily affirmed. (Ex. S).

Section 2254(d)(2) provides no basis for relief, because the state court's factual determinations are amply supported by the state court record. Petitioner's girlfriend Ms. Prince testified that petitioner earned money several ways: he performed pressure washing jobs with Leonard Gonzalez, Sr.; he performed side jobs as a plumber "quite often"; he repaired cars and lawn mowers; he mowed lawns and chopped wood; and he otherwise "always found something to do with his time." (Ex. E, pp. 179, 182-183). In petitioner's statements to law enforcement, played for the jury, petitioner described that he had his plumber's license; that he worked for Tradesmen International, a company that placed skilled craftsmen in local jobs; that he was a foreman; and that in addition to plumbing jobs, he performed other kinds of work such as pressure washing homes and sidewalks, mowing lawns and repairing cars. (Ex. E, pp. 698-700, 705, 710-712). Petitioner added: "I'm not a thief. I don't go kicking people's doors in; that's not – I'm sorry. The little bit of money my girlfriend makes is plenty." (Ex. E, p. 762).

Given the state court's state-law determination concerning the inadmissibility of King's and Taylor's proposed opinion testimony of whether petitioner was financially motivated to participate in the crimes, and given that the jury heard evidence concerning petitioner's employment, this court cannot say that the state court's rejection of petitioner's claim contravened *Strickland*.  Petitioner has not established a reasonable probability that Mr. King's and Mr. Taylor's proposed testimony would have been admitted, nor has he established a reasonable probability that the testimony, if admitted, would have changed the outcome of the trial.

The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Five.

Ground Six        "Whether defendant was deprived of the effective assistance of counsel at trial, when counsel failed to object and/or preserve for appellate review the fact that although defendant was purported to have carried a .357 firearm during the commission of the robbery/murder, no such firearm was ever found at the location when all the other firearms were recovered?"  (Doc. 17, p. 11).

Petitioner claims trial counsel was ineffective for failing to object, and for failing to "elaborate on" and "use" what petitioner characterizes as "anomalies" in the State's evidence to convince the jury that the State failed to prove beyond a reasonable doubt he was armed with a .357 magnum revolver during the crimes.

Petitioner explains that although two co-defendants (Frederick Thornton and Rakeem Florence) testified for the State that petitioner was armed with a .357 revolver, the .357 revolver was never introduced into evidence, law enforcement never recovered a .357 revolver even though they recovered all other firearms involved in the crime, and none of the State's photographic evidence from the crime scene depicted a .357 revolver. Petitioner argues that trial counsel should have "elaborate[d] on this anomaly and use[d] this lack of proof to suggest that perhaps the co-defendant's [sic] were not entirely truthful." (Doc. 17, p. 11).

Respondent asserts that the state court ruled as a matter of state law that petitioner's proposed objection to Thornton's and Florence's testimony would have been overruled because the grounds he offered provided no legal basis to object; that the state court's binding determination of state law means there could not be attorney error or prejudice for failing to make a meritless objection; that the jury was fully aware that no .357 revolver was recovered; and that petitioner has not established the state court's rejection of his ineffective assistance claim is contrary to or an unreasonable application of *Strickland*. (Doc. 34, pp. 19-20).

A.   Clearly Established Federal Law

The clearly established law governing claims of ineffective assistance of counsel is the *Strickland* standard, described above.

B.    Federal Review of State Court Decision

Petitioner raised this claim in his first Rule 3.850 proceeding as Ground Five.

(Ex. O).  The state court identified and articulated the *Strickland* standard (Ex. P, pp.

121-122), and denied relief on the merits as follows:

> In his fifth claim, Defendant asserts that his counsel was ineffective for failing to object to testimony that Defendant was armed with a .357 revolver during the crime.  Two co-defendants testified that Defendant was in possession of such a weapon, and Defendant appears to assert that counsel should have objected to the introduction of their testimony based on the fact that no such weapon was ever recovered and offered into evidence.  He also states that "trial counsel's failure to elaborate on this anomaly and use this lack of proof to suggest that the co-defendants were not entirely truthful . . . prejudiced defendant by not providing a complete picture for the jury to consider during their deliberations."
>
> Defendant has failed to show that his counsel was deficient or that he was prejudiced.  First, counsel had no identifiable legal basis to object to the testimony of the co-defendants, simply because no .357 revolver was recovered.  Secondly, counsel did point out in his closing argument that the jury had not been presented with the weapon, stating, "He may or may not have had a .357; we don't have it here; we don't have a .357. . . . there is never a .357 found.  We don't know whether the .357, if it existed at all, is loaded or not. . . ."FN15  Furthermore, counsel conducted a thorough cross examination of both co-defendants;FN16 any questioning of the co-defendants on the fact that a .357 was not recovered would be of little to no additional value.  Defendant has failed to demonstrate either deficient performance or prejudice.  He is not entitled to relief on this basis.
>
> FN15  See Attachment 5, trial transcript excerpts, page 906.
> FN16  See Attachment 5, trial transcript excerpts, pages 266-370; 379-429; 434-553.

(Ex. P, pp. 127-128).  The First DCA summarily affirmed.  (Ex. S).

    As the state court correctly determined, petitioner offers no legal basis for his proposed objection to Thornton's and Florence's testimony.  The mere fact that their testimony concerning petitioner's carrying a firearm was not corroborated by physical evidence is not a legal basis to object to, or exclude, the testimony.  Counsel is not ineffective for failing to raise a meritless objection.  *Freeman v. Attorney Gen., Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."); *Chandler v. Moore*, 240 F.3d 907 (11th  Cir. 2001) (concluding that counsel was not ineffective for failing to raise an objection that lacked merit).  Additionally, as the state court detailed and as the trial transcript establishes, defense counsel did "elaborate" on the lack of physical evidence of the .357 revolver, during closing argument.   (Ex. E, p. 906).

    The state court's rejection of petitioner's claim was consistent with clearly established federal law and was based on a reasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Six.

Ground Seven          "Whether defendant was deprived of the effective assistance of
                      counsel at trial, when counsel failed to object to the State
                      Attorney's constant reference to cell phone records that proved
                      the defendant was in constant contact with Gonzalez, Sr. and
                      Gonzalez, Jr. on the days preceding the date of the
                      robbery/murders, where such proof did not exist, and these
                      references amounted to presentation of false evidence that
                      mislead [sic] the jury and contributed to defendant's
                      conviction?" (Doc. 17, p. 12).

       Petitioner alleges that during trial, the prosecutor argued to the jury that

petitioner was in constant communication with codefendants Leonard "Frank"

Gonzalez, Sr., and Leonard "Patrick" Gonzalez, Jr., when there was no evidence to

support that argument.  Petitioner asserts that although the prosecutor introduced

into evidence "charts and phone company records", those records did not show there

was any communication between petitioner and either of those co-defendants on the

day of the crime (July 9, 2009).  Petitioner faults trial counsel for failing to object to

the charts and cell phone records on the grounds that they were "fabricat[ed]", and

for failing to object to the prosecutor's argument on the grounds that it was not

supported by the evidence.  (Doc. 17, p. 12).

       Respondent asserts a procedural default defense, arguing that petitioner failed

to present a facially sufficient claim in state court, that the postconviction court

found petitioner's claim "facially insufficient as a matter of state law", and that the

state court's rejection of the claim amounts to the imposition of a state procedural

bar. (Doc. 34, pp. 21-24).  Respondent asserts that even if the state court's ruling is considered an adjudication on the merits, petitioner is not entitled to habeas relief because he cannot demonstrate that the rejection of his claim is contrary to or an unreasonable application of *Strickland*.  (Doc. 34, pp. 24-25).

A.     Clearly Established Federal Law

The clearly established law governing claims of ineffective assistance of counsel is the *Strickland* standard, described above.

B.     Federal Review of State Court Decision

Petitioner raised this claim in his first Rule 3.850 proceeding as Ground Six. (Ex. O).  The state court denied relief on the claim as follows:

> In his sixth claim, Defendant asserts that his counsel was ineffective for failing to object to the State Attorney's "constant reference" to the cell phone records showing that Defendant was in "constant contact' with Gonzalez Sr. and Gonzalez Jr. on the days preceding the murder, because "such proof did not exist."  defendant asserts that "counsel knew or should have known that the phone records . . . did not . . . reveal[ ] any communication between Coldiron and the Gonzalezes."

> First, Defendant has failed to specifically identify any statement by the prosecution which was objectionable, or what evidence was presented that was a "fabrication."  Secondly, the witness called by the State regarding the phone records, testified only briefly with regard to phone contact between the defendants.FN17   Thirdly, in cross-examination, upon questioning by counsel, the witness indicated, that while the numbers in question were "associated" with certain people, it could not be determined "who used a particular phone . . . on a particular day," and that between June 2 and July 11, 2009, there was

no direct contact between the number associated with Defendant and the number associated with Patrick Gonzalez Jr., the group's ringleader.FN18   Lastly, the records of the relevant phone numbers were entered into evidence, providing the jury with the opportunity to draw its own conclusions with regard to the level of contact between these individuals.  Defendant has failed to demonstrate an entitlement to relief on the basis of this claim, as he has failed to show either deficient performance or prejudice.

> FN17 <u>See</u> Attachment 5, trial transcript excerpts, pages 674-683.
> FN18 <u>See</u> Attachment 5, trial transcript excerpts, pages 682-683.

(Ex. P, pp. 127-128).  The First DCA summarily affirmed.  (Ex. S).

Respondent's procedural default defense should be rejected.  *See Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1286 (11th Cir. 2012) ("[J]ust as under our federal procedural rules, a Florida state court's dismissal of a post-conviction claim for facial insufficiency constitutes – at least for purposes of the procedural default analysis – a ruling "on the merits" that is not barred from our review. . . . [W]hether the Florida Supreme Court rejected the claims for facial insufficiency or only after concluding that they were refuted by the record, the determination would have been on the merits."); *Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 913 (11th Cir. 2009) (rejecting State's procedural default argument; holding that Florida Supreme Court's rejection of petitioner's ineffective assistance claim as insufficiently pled because petitioner failed to identify any specific evidence in the record supporting

it, constituted a ruling on the merits and was not a procedural bar ruling); *see also, e.g., Small v. Fla. Dep't of Corr.*, 470 F. App'x 808, 811 (11th Cir. 2012) (holding that ineffective assistance claim based on counsel's failure to call particular witness (McMillan) was not dismissed by state court as procedurally barred; acknowledging that under Florida law a postconviction movant must, as part of the requirement to show prejudice under *Strickland*, allege that a witness was available to testify at trial, but concluding: "The Florida trial court, in the only reasoned decision addressing this claim, did not make a clear and express statement that it relied upon state procedural law when it dismissed Small's claim for failing to allege that McMillan was available to testify at his trial, and its determination was intertwined with an interpretation of federal law.").

Petitioner does not dispute any of the state court's factual determinations, nor can he. The state court's findings are amply supported by the record, are reasonable, and are presumed correct. 28 U.S.C. §§ 2254(d)(2) and (e)(1).

At no time during the prosecutor's opening statement did he mention phone records linking petitioner to the crimes. (Ex. Ex, pp. 126-143). During his lengthy closing argument, the only reference the prosecutor made concerning phone records as they related to petitioner was:

> The phone records. The phone records corroborate and establish the link between Patrick Gonzalez, Jr., and the group in Fort Walton

Beach to Mr. Sumner, just as Mr. Florence and Mr. Thornton testified how the chain of command works between Patrick Gonzalez, Jr.  We also know that the phone records establish a link between Patrick Gonzalez, Jr., his father, and also the defendant.  We also know that on that night there is a single phone call from Gonzalez, Jr., to Sumner, and what happens next?  There is a gathering of the group.  The group leave from Fort Walton Beach and where do they go?  They go to Mr. Gonzalez, Sr.'s, residence. . . .  They proceed to Mr. Gonzalez, Sr.'s, residence at Palm Court; it's there that they find the defendant, Wayne Thomas Coldiron.

(Ex. E, pp. 878-880).  The prosecutor's references to "the group in Fort Walton Beach" were to petitioner's co-defendants Mr. Sumner, Mr. Stallworth, Mr. Florence and Mr. Thornton.  (Ex. E, p. 132).  During final closing, the prosecutor argued:

No phone calls, the phone records show.  That is the one thing I want to be clear with Mr. Gillespie.  During the period of time on July the 9th there is no contact between Junior, Senior, and Mr. Coldiron.  In that period sometime in the morning to almost 8 or 9 o'clock at night.  No phone calls during that period of time.

(Ex. E, p. 892).

Contrary to petitioner's allegations, the trial transcript establishes that the prosecutor did not "assert[ ] that evidence existed that there was constant communication between defendant Coldiron and co-defendant's [sic] Leonard 'Frank' Gonzalez, Sr. and Leonard 'Patrick' Gonzalez, Jr. . . ." (Doc. 17, p. 12).  Of the statements the prosecutor actually made in opening and closing statements concerning the phone records, petitioner does not identify any statement that was not a fact in evidence or a reasonable inference therefrom.  *See Breedlove v. State*, 413

So.2d 1, 8 (Fla. 1982) (explaining the Florida standard concerning permissible argument); *Tucker v. Kemp*, 762 F.2d 1496, 1506 (11th Cir. 1985) (articulating the federal due process standard). Similarly, plaintiff offers no facts to support his conclusory assertion that the phone records were "fabricated".

Because petitioner has not shown there was a valid legal basis to object to the prosecutor's statements, that no reasonable attorney would have failed to object, and that there is a reasonable probability the result of his trial would have been different had counsel objected, his ineffective assistance claim fails. The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground Seven.

Ground Eight        "Whether defendant was deprived of the effective assistance of counsel at trial, when counsel misadvised defendant on his right to testify in his own behalf, where counsel informed defendant that if he testified the State would use his recorded statement as evidence of his inconsistent statements, which the State conceded they would not seek to admit if the defendant did not testify?" (Doc. 17, p. 12).

This claim relates to Ground Two, *supra*. Petitioner alleges:

Prior to trial defense counsel had made a[n] agreement with the state that defense would not proceed with a motion to suppress defendant's recorded statements that he made to police after defendant's arrest if the defendant would agree not to testify in his own

> behalf.  Based on this advi[c]e, defendant made the decision not to
> testify and tell his side of the story because of counsel's misadvise and
> the purported agreement with the state prosecutor that the recorded
> statement would not be admitted before the jury if defendant agreed not
> to testify.

(Doc. 17, p. 13).  Petitioner acknowledges that he waived his right to testify in open

court after a colloquy with the trial judge, but asserts his waiver was "coerced and

based on fabricated information that was told to defendant in order to persuade him

not to testify in his own behalf."  (*Id.*).  Respondent asserts that the state court

properly denied relief on this claim.  (Doc. 34, pp. 25-26).

    A.    Clearly Established Federal Law

The clearly established law governing claims of ineffective assistance of

counsel is the *Strickland* standard, described above.

    B.    Federal Review of State Court Decision

Petitioner raised this claim in his first Rule 3.850 proceeding as Ground

Seven.  (Ex. O).  The state court identified and articulated the *Strickland* standard

(Ex. P, pp. 121-122), and denied relief on the merits as follows:

> In his seventh ground, Defendant alleges that his counsel was
> ineffective in misadvising him regarding his right to testify in his own
> behalf.  According to defendant, counsel informed him that if he
> testified the State would use his recorded statement as evidence of
> inconsistent statements.  Because of this, and because of the State's
> alleged agreement not to present the recorded statement if Defendant
> agreed not to testify, Defendant states that he made the decision not to
> testify, and states that he would have testified that he "happened to visit

Gonzalez Sr.'s residence on the day the home invasion robbery of the Billings' estate was to occur," and that "he was basically kidnapped by Gonzalez Jr. where he was told if he did not participate in the planned robbery that Gonzalez Jr., would kill him and his girlfriend."

As previously noted, the record refutes Defendant's allegations that the State indicated it would not introduce Defendant's recorded statement if he declined to testify. Defendant has further failed to show that counsel was deficient in his advice that the State might use his recorded statement to impeach him should he choose to testify. Additionally, Defendant's contention that his decision not to testify was based on a belief that the State would not offer his recorded statements into evidence is refuted by the records. The State offered the recorded statement, and then rested its case.FN19  Shortly thereafter, the Court queried Defendant regarding his decision to testify in his own behalf.FN20  Thus, Defendant was clearly aware prior to his decision not to testify that the recorded statement had been offered into evidence and it is patently illogical to conclude that Defendant declined to testify based on a belief that the State would not introduce his statement, as indeed, it had already done so. He is not entitled to relief on this basis.

> FN19 See Attachment 5, trial transcript excerpts, pages 690-693, 76–851.
> FN20 See Attachment 5, trial transcript excerpts, pages 852-855.

(Ex. P, p. 129). The First DCA summarily affirmed. (Ex. S).

This claim warrants little discussion. The state court's factual findings are neither "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), nor contradicted by "clear and convincing evidence," *id*. § 2254(e)(1). The pretrial hearing and trial

transcripts wholly refute the factual basis of petitioner's claim.  (*See* Doc. 34, Ex. E; Doc. 53).

In light of the state court's findings and the evidence in the state court record, it was neither contrary to, nor an unreasonable application of, the *Strickland* standard to deny relief on petitioner's claim that counsel misadvised and coerced him not to testify.  Petitioner is not entitled to federal habeas relief on Ground Eight.

Ground Nine        "Whether defendant was deprived of the effective assistance of counsel at trial, when counsel failed to request a jury instruction on independent act, where it could be determined from the evidence adduced at trial that the murders were the result of the sole act of Gonzalez, Jr. and not part of the original plan or scheme?"  (Doc. 17, p. 13).

Petitioner faults trial counsel for failing to request a jury instruction on independent act.  (Doc. 17, pp. 13-14).  Respondent asserts that the state court ruled as a matter of state law that petitioner was not entitled to a jury instruction on independent act; that the state court's binding determination of state law means there could not be attorney error or prejudice for failing to request the instruction; and that petitioner therefore has not established the state court's rejection of his ineffective assistance claim is contrary to or an unreasonable application of *Strickland*.  (Doc. 34, pp. 26-27).

A.    Clearly Established Federal Law

The clearly established law governing claims of ineffective assistance of counsel is the *Strickland* standard, described above.

B.    Federal Review of State Court Decision

Petitioner raised this claim in his first Rule 3.850 proceeding as Ground Eight. (Ex. O).  The state court identified and articulated the *Strickland* standard (Ex. P, pp. 121-122), and denied relief on the merits as follows:

> In his eighth claim, Defendant asserts that his counsel was ineffective for failing to request a jury instruction regarding "independent act."  This instruction was required, according to Defendant, because "it was common knowledge that the murders . . . was (sic) the sole act of Patrick Gonzalez, Jr., and was never part of any plan or scheme involving any of the other participants in this crime."
>
> Defendant has failed to demonstrate that his counsel was ineffective in that he has failed to plead any facts which would justify a request for an independent act instruction.  The fact that the murders themselves were not "part of any plan or scheme" prior to the murder is not sufficient.
>
> The independent act doctrine is applicable "when one co-felon, who previously participated in a common plan, does not participate in acts committed by his co-felon, 'which fall outside of, and are foreign to, the common design of the original collaboration.'"  Ray v. State, 755 So. 2d 604, 609 (Fla. 2000) (citations omitted).  "Where, however, the defendant was a willing participant in the underlying felony and the murder resulted from forces which they set in motion, no independent act instruction is appropriate."  Id.
>
> "[A]n independent act instruction is inappropriate when the unrebutted evidence shows the defendant knowingly participated in the

underlying criminal enterprise when the murder occurred or knew that firearms or deadly weapons would be used.  In contrast, cases reversing for the failure to give the independent act instruction typically are devoid of one or the other."  Roberts v. State, 4 So. 3d 1261, 1264-65 (Fla. 5th DCA 2009).FN21

> FN21 See also Lopez v. State, 97 So. 3d 301 (Fla. 4th DCA 2012) (Independent act instruction was not appropriately given in prosecution for first degree murder during the perpetration or attempt to perpetrate a burglary or robbery, where defendant knew of and agreed to commit robbery, the murder occurred in furtherance of the robbery, and there was no evidence that the murder was not in furtherance of the plan to rob victim).

> Because he has failed to show that the evidence supported the giving of an independent act instruction, Defendant has failed to demonstrate that his counsel was deficient.  He has further failed to demonstrate that the outcome of this trial would have been different had counsel succeeded in having the court give such an instruction.  Consequently, he is not entitled to relief on this basis.

(Ex. P, pp. 130-131) (alternations in original).  The First DCA summarily affirmed.

(Ex. S).

Petitioner has not established that the decision of the state courts to deny his ineffective assistance claim is contrary to or an unreasonable application of *Strickland*.  The state courts concluded, as a matter of state law, that petitioner was not entitled to an instruction about independent act based on Florida precedent, and this court defers to that conclusion.  *See Callahan*, 427 F.3d at 932.  Counsel cannot be ineffective for failing to request a jury instruction to which petitioner was not

entitled.  *See Strickland*, 466 U.S. at 692-94; *see also, e.g., Jenkins v. Sec'y, Fla. Dep't of Corr.*, 520 F. App'x 871, 873 (11th Cir. 2013) (denying habeas relief on claim that counsel was ineffective for failing to request jury instruction; state court's conclusion that defense counsel was not deficient in failing to request instruction "was not an unreasonable conclusion based on Florida precedent regarding jury instructions"); *Sabillo v. Sec'y, Dep't of Corr.*, 355 F. App'x 346, 349 (11th Cir. 2009) (denying habeas relief on claim that counsel was ineffective for failing to request jury instruction; state courts concluded petitioner was not entitled to instruction; that state law conclusion was entitled to deference; and counsel could not be ineffective for failing to request an instruction to which the petitioner was not entitled (*citing Callahan, supra*)).  Petitioner is not entitled to federal habeas relief on Ground Nine.

Ground Ten          "Whether defendant was deprived of the effective assistance of counsel at trial, when counsel failed to object to the instruction on principle [sic], where there was no evidence presented during trial that defendant participated in or aided in the planning of the robbery, and had not provided any assistance during the preparation and gathering of weapons used during the crime?" (Doc. 17, p. 14).

Petitioner faults trial counsel for failing to object to the jury instruction on principal liability.  Petitioner argues that counsel should have objected on the grounds that "evidence adduced at trial had proven that the defendant was not a

participant in the planning of this crime and only became involved (unwillingly) on the day that the actual crime occurred, July 9, 2009." (Doc. 17, pp. 14-15). The evidence to which petitioner refers is co-defendants Thornton's and Florence's testimony, which petitioner describes as "Coldiron was never present at the meetings that took place prior to the date of the robbery/murder(s) and their first contact with him was at Frank Gonzalez's house on July 9th, when they were getting ready to proceed with the events that had been planned out by the rest of the group." (*Id.*, p. 15).

Respondent asserts that the state court ruled as a matter of state law that petitioner's proposed objection to the principal instruction was meritless; that the state court's binding determination of state law means there could not be attorney error or prejudice for failing to make the objection; and that petitioner therefore has not established that the state court's rejection of his ineffective assistance claim is contrary to or an unreasonable application of *Strickland*. (Doc. 34, pp. 28-29).

A. Clearly Established Federal Law

The clearly established law governing claims of ineffective assistance of counsel is the *Strickland* standard, described above.

B.      Federal Review of State Court Decision

Petitioner raised this claim in his first Rule 3.850 proceeding as Ground Nine.

(Ex. O).  The state court identified and articulated the *Strickland* standard (Ex. P, pp.

121-122), and denied relief on the merits as follows:

> In his ninth claim, Defendant alleges that he was deprived of the effective assistance of counsel, because counsel failed to object to the jury instruction on the principal theory.  Defendant alleges that "there was no evidence presented during trial that Defendant participated in or aided in the planning of the robbery, and had not provided any assistance during the preparation and gathering of weapons," and thus the giving of the principal theory instruction was inappropriate. Defendant has failed to state a legal basis for counsel to object to the giving of the principal instruction.

> > The felony murder rule and the law of principals combine to make a felon liable for the homicidal acts of a co-felon if the co-felon commits a homicide in furtherance or prosecution of the co-felons' initial common criminal scheme.  Lovette, 63 So 2d at 1306 ("As perpetrators of an underlying felony, co-felons are principals in any homicide committed to further or prosecute the initial common criminal design." (citing Adams v. State, 341 So. 2d 765 (Fla. 1976))); Bryant v. State, 412 So. 2d 347, 350 (Fla. 1982); Beachy v. State, 837 So. 2d 1152, 1152 (Fla. 1st DCA 2003); see also State v. Amaro, 436 So. 2d 1056, 1061 (Fla. 2d DCA 1983) (holding that "one who aids and abets the commission of a felony" is liable for a homicide committed in furtherance of or "as a probable, predictable, reasonably foreseeable, or causally connected result of the underlying felony" even where the felons had no "premeditated design . . . to commit a homicide").

> > Cannon v. State, 18 So. 3d 562, 566 n.4 (Fla. 1st DCA 2009) (Benton, J., dissenting).

Neither the fact that Defendant was a "last minute addition" to the robbery scheme, nor his position that he acted out of duress, acts to negate the State's right to the principal instruction, where the State's evidence indicated that Defendant entered the Billings' home, armed with a handgun, during the course of a planned home invasion robbery. Defendant has failed to show that his counsel was deficient. He is not entitled to relief on the basis of his ninth claim.

(Ex. P, pp. 131-132). The First DCA summarily affirmed. (Ex. S).

The state court determined, as a matter of state law, that petitioner's proposed basis for objecting to the instruction on principal liability would have been overruled because petitioner's arguments did not negate the State's entitlement to the instruction. This court defers to the state court's conclusion. *Callahan, supra*. Counsel is not ineffective for failing to preserve or argue a meritless issue. *Freeman*, 536 F.3d 1233; *see also Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (concluding that counsel was not ineffective for failing to raise issues clearly lacking in merit); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. *See, e.g., Callahan* at 932 (holding that defense counsel cannot be deemed ineffective for failing to make a state-law-based objection when the state court has already

concluded that the objection would have been overruled under state law; to conclude otherwise would require the federal habeas court to make a determination that the state court misinterpreted state law); *Herring v. Sec 'y Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) (denying federal habeas relief on petitioner's ineffective assistance claim based on counsel's failure to make a state-law-based objection; holding that the Florida Supreme Court's conclusion that the proposed objection would have been overruled was binding and precluded federal habeas relief on the ineffective assistance claim).  Petitioner is not entitled to federal habeas relief on Ground Ten.

Ground Eleven       "Whether defendant was deprived of the effective assistance of counsel at trial, when counsel failed to present a viable motion for judgment of acquittal, failing to research and present any case authority that would induce the court to grant judgment of acquittal?"  (Doc. 17, p. 15).

Petitioner faults trial counsel for "recit[ing] an abbreviated inartfully pled motion for judgment of acquittal, without articulating any supporting authority for his argument."  (Doc. 1, p. 15).  Petitioner argues that given the magnitude of the charges, counsel's conduct "[c]an only be construed as being ineffective assistance of counsel, regardless of whether the court would have granted JOA, the issue would have been preserved for appellate review."  (*Id.*, pp. 15-16).

Respondent asserts a procedural default defense, arguing that the state postconviction court found that petitioner failed to make a facially sufficient claim for relief because he failed to show a motion for JOA had a likelihood of success as required by Florida law, and that the state court's rejection of the claim amounts to the imposition of a state procedural bar. (Doc. 34, p. 29).   Respondent asserts that even if the state court's ruling is considered an adjudication on the merits, petitioner is not entitled to habeas relief because the state court found, as a matter of state law, that any motion for JOA would have been fruitless and counsel cannot be ineffective for failing to make a meritless motion.  (*Id*., p. 31).

A.     Clearly Established Federal Law

The clearly established law governing claims of ineffective assistance of counsel is the *Strickland* standard, described above.

B.     Federal Review of State Court Decision

Petitioner raised this claim in his first Rule 3.850 proceeding as Ground Ten. (Ex. O).  The state court denied relief on the claim as follows:

> In his tenth claim, Defendant alleges that his counsel was ineffective for failing to present a "viable" motion for judgment of acquittal.   This claim is facially insufficient.   "Where there is no showing that a motion for judgment of acquittal had a likelihood of success, a movant has not presented a facially sufficient claim of ineffectiveness of counsel." Neal v. State, 854 So. 2d 666, 670 (Fla. 2d DCA 2003), citing Rogers v. State, 567 So. 2d 483 (Fla. 1st DCA 1990). "A motion for judgment of acquittal should only be granted if there is

no view of the evidence from which a jury could make a finding contrary to that of the moving party." Jeffries v. State, 797 So. 2d 573, 580 (Fla. 2001) (citations omitted).  In moving for a judgment of acquittal, a defendant "admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence." Beasley v. State, 744 So. 2d 649, 657 (Fla. 2000) (quoting Lynch v. State, 293 So. 2d 44, 45 (Fla. 1974)).

"To present a facially sufficient postconviction claim that counsel was ineffective for failing to raise and preserve a sufficiency of the evidence claim for appeal via a timely and contemporaneous motion for judgment of acquittal, 'a movant should state sufficient facts to show that [he] may very well have prevailed on a more artfully presented motion for acquittal based upon the evidence he alleges was presented against him at trial.'" White v. State, 977 So. 2d 680, 681 (Fla. 1st DCA 2008) (citations and quotations omitted).

However, "[b]ecause conflicts in the evidence and the credibility of the witnesses have to be resolved by the jury, the granting of a motion for judgment of acquittal cannot be based on evidentiary conflict or witness credibility.  Any conflicts in the evidence are properly resolved by the jury.  A motion for judgment of acquittal should not be granted unless the evidence is such that no view which the jury may lawfully take favorable to the state can be sustained under the law." Sapp v. State, 913 So. 2d 1220, 1223 (Fla. 4th DCA 2005) (citations omitted).

The testimony at trial presented by the co-defendants indicated that Defendant entered the home as a participant in the home invasions robbery, armed with a .357 handgun.  While Defendant may maintain that he was not a willing participant in the crime, he has failed to show a specific factual basis for a more "artful" judgment of acquittal, as whether he attempted to withdraw or was a willing participant in the crime were clearly questions for the trier of fact to resolve.FN22  He has further failed to show that any such motion would have been granted.  Defendant is not entitled to relief on this basis.

> FN22 Counsel did make a motion for judgment of acquittal. <u>See</u> Attachment 5, trial transcript excerpts, pages 859-862.

(Ex. P, pp. 132-133) (alterations in original).  The First DCA summarily affirmed. (Ex. S).

As with Ground Seven, respondent's procedural default defense should be rejected.  The state court's rejection of petitioner's claim was an adjudication on the merits.  *See* discussion *supra* Ground Seven.

The trial transcript establishes that defense counsel moved for a judgment of acquittal, arguing that even the State's evidence showed petitioner acted out of duress.  (Ex. E, pp. 859-862).  The trial court denied the motion: "I've considered the motion.  The court must be mindful in considering these motions for judgment of acquittal that it should consider and construe the evidence and any inferences attached thereto in the light most favorable to the State.  Given that standard, the Court concludes that this evidence is sufficient to warrant submission to the jury, the trier of fact, to resolve the – these disputed issues.  So the record will show that the motion was timely made at the close of the state's case, as well as the close of all the evidence, and that the motions for judgment of acquittal on all counts will be denied."  (Ex. E, pp. 860-861).  Defense counsel clarified, and the court confirmed,

that the issue of the sufficiency of the evidence was preserved for appellate review as to all counts.  (*Id*., p. 862).

In order to meet the *Strickland* standard, petitioner must show that, had his counsel done was he says counsel should have done (that is, supported the motion for JOA with case law), there is a reasonable probability the trial judge would have granted the motion.  Petitioner has not shown that.  Petitioner identifies no case law counsel could have cited to support his position, much less case law that probably would have made a difference in the trial judge's ruling.  Petitioner also has not shown that counsel's failure to cite case law prejudiced his ability to challenge the sufficiency of the evidence on direct appeal.

The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Eleven.

| Ground Twelve | "Whether the conviction and sentence in this case should be vacated and set aside, where the state attorney wa[s] aware that there existed exculpatory and exonerating evidence from a co-defendant, Gary Lamont Sumner, Jr., that would support Coldiron's theory of defense, where this evidence was known, prior to, during and subsequent to Coldiron's criminal trial, and failed to reveal this evidence to anyone until Coldiron sought to have it exposed by way of a motion for discovery?"  (Doc. 17, p. 16). |

Petitioner's final ground is that the State was aware of exculpatory evidence prior to trial and did not disclose it.  The allegedly exculpatory evidence is "that Coldiron's co-defendant, Gary Lamont Sumner, Jr., was involved long before the Billings robbery and murders took place and although Sumner was reluctant to participate, he too became involved under threat of death, supporting Coldiron's theory of defense." (Doc. 17, p. 17).  Petitioner asserts that Sumner's testimony also "reveals that Coldiron was not a major participant in the planning of the crime and as Coldiron claimed all along, he went along on the day of the crime (June 9, 2009) because he happened to show up at Patrick Gonzalez, Sr.'s house (his work partner) to see if there were any jobs waiting and was told by Gonzalez, Jr., if he did not go with them that he, his girlfriend, and her daughter would all be killed." (*Id*., pp. 17-18).  Petitioner asserts he raised this claim in a successive Rule 3.850 motion. (*Id*., p. 18).

Respondent asserts a procedural default defense, arguing that the state court rejected the claim on independent and adequate state procedural grounds. (Doc. 34, p. 31).  Respondent alternatively argues that the claim is without merit. (*Id*., pp. 32-33).

A.    Procedural Default

"As a rule, a state prisoner's habeas claims may not be entertained by a federal court when (1) a state court [has] declined to address [those] claims because the prisoner had failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds." *Maples v. Thomas*, 565 U.S. —, 132 S. Ct. 912, 922, 181 L. Ed. 2d 807 (2012) (alterations in original) (internal quotation marks and citations omitted); *see also Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the state rule must be "firmly established and regularly followed," *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001), or in a manifestly unfair manner. *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995). A petitioner seeking to overcome a procedural default must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider

the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993).

The state court rejected petitioner's claim on state procedural grounds, finding it was "both untimely and successive under rule 3.850". (Ex. Z, p. 48). The court went on to find that petitioner failed to meet Florida's exception for claims involving newly discovered evidence, because the alleged statements made by Mr. Sumner to investigators in June of 2011, were not made until <u>after</u> petitioner's trial in January of 2011, and were not of such nature that they would probably produce an acquittal on retrial. (*Id*., pp. 49-51). The First DCA summarily affirmed. (Ex. GG).

The Eleventh Circuit has "already concluded that the procedural requirements of Florida's Rule 3.850 constitute independent and adequate state grounds under the applicable law." *LeCroy v. Sec'y, Fla. Dep't of Corr*., 421 F.3d 1237, 1260 n. 25 (11th Cir.2005) (*citing Whiddon v. Dugger*, 894 F.2d 1266, 1267-68 (11th Cir. 1990)); *see also* Fla. R. Crim P. 3.850(b) (establishing two-year time limitation for motions seeking relief under that Rule); Fla. R. Crim. P. 3.850(h) (providing for dismissal of successive motions). Because petitioner's second Rule 3.850 motion was successive and was filed outside Florida's two-year time limitation, the state court's refusal to consider petitioner's claim as procedurally barred rested on

independent and adequate state grounds that preclude federal habeas review.  *See Jennings v. McDonough*, 490 F.3d 1230, 1247-48 (11th Cir. 2007) (holding that state court's conclusion that petitioner's claims were procedurally barred by Florida's rule against successive postconviction motions was a state law ground independent of the federal question and adequate to support the state court's judgment, thereby rendering the claims procedurally defaulted on federal habeas review).

Petitioner does not satisfy the cause and prejudice standard to excuse his procedural default.  Petitioner essentially raises a *Brady* claim.  In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Id*. at 87.  A successful *Brady* claim requires the defendant to establish each of the following:  "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the state, either willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene*, 527, U.S. 263, 282-282, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999).  Prejudice is measured by determining "whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'"

*Strickler*, 527 U.S. at 290 (*quoting Kyles v. Whitley*, 514 U.S. 419, 435, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995)).  Petitioner's *Brady* claim is wholly insubstantial. The state court found, and the record establishes, that the statements of Gary Sumner did not exist until <u>after</u> petitioner was tried.  (*See* Ex. Z, p. 3 and Attach.).  The State cannot suppress evidence which does not yet exist.

Petitioner also fails to satisfy the miscarriage of justice exception.  The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  This standard is very difficult to meet:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

513 U.S. at 327.  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Id*.

Petitioner has not established any constitutional error, as discussed above. Petitioner also has not established that "it is more likely than not that no reasonable

juror would have convicted him" had Mr. Sumner's statements been presented at

trial. *Id.* The reasons are aptly summarized by the state court:

> In summary, Defendant appears to assert that Sumner indicated he was
> reluctant to participate in the crimes, but that he did participate because
> he was threatened with death. Defendant concludes that such testimony
> would support Defendant's theory that he too was an unwilling
> participant who was threatened with harm by his co-defendant.
> Defendant also asserts that Sumner would demonstrate that Defendant
> "was not a major participant in the planning" and that he went along
> with the crime because he was told that "he, his girlfriend, and her
> daughter would all be killed." First, as noted in the Court's order
> denying Defendant's original rule 3.850 motion, two co-defendants
> testified to defendant's role in the crime, and the crime was captured on
> surveillance tapes. Furthermore, each co-defendant testified that they
> were placed in fear for themselves and their families by another co-
> defendant.FN4 Lastly, it was uncontested at trial that Defendant was
> not a participant in the crime until shortly before it occurred, and ample
> testimony was offered at trial that he was an "unwilling" participant in
> the crime.
>
> FN4 <u>See</u> Attachment 2; Attachment 4, trial transcript
> excerpts.

(Ex. A, pp. 50-51). Petitioner has not satisfied the *Schlup* standard to excuse his

procedural default. Petitioner's procedural default bars federal habeas review of

Ground Twelve.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States

District Courts provides: "[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant." If a certificate is

issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.  That the amended petition for writ of habeas corpus (doc. 17), challenging the judgment of conviction and sentences in *State of Florida v. Wayne Thomas Coldiron*, Escambia County Circuit Court Case No. 09-CF-3249, be DENIED.

2.  That the clerk be directed to close the file.

3.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 30th day of August, 2016.


*s/* *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.   A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.